PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.*
CADILLAC UNIFORM AND LINEN SUPPLY, INC., Respondent.

No. O-69-113.    Decided December 10, 1969.

*José F. Rodríguez Rivera, Acting Solicitor General, Celia Canales
González, Marta Ramírez Vera,* and *José E. Rodríguez Rosaly*
for petitioner. *Goldman, Antonetti & Subirá, Rafael F.
Morales Cabranes,* and *David F. Barreto* for respondent.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 3, 1968 the Labor Relations Board rendered a decision declaring the Cadillac Uniform & Linen Supply, Inc., guilty of the unfair practice of violation of a bargaining agreement, § 8 (1) (f) of the Labor Relations Act, 29 L.P.R.A. § 69 (1) (f), and consequently ordered it to:

"1.—Cease and desist from:

"(a) In any manner violating the terms of the collective bargaining agreement which it has signed with the Congreso de Uniones Industriales de Puerto Rico.

"2.—Take the following affirmative action:

"(a) To remit to the Congreso de Uniones Industriales de Puerto Rico the amount of the corresponding dues pursuant to Article III of the agreement.

"(b) To meet with the representatives of the Congreso de Uniones Industriales de Puerto Rico in the Grievance Committee to consider the complaints which gave rise to the filing of the complaint in the above-entitled cases.

"(c) To send to the Congreso de Uniones Industriales de Puerto Rico by certified mail copy of the notice which is attached to this Report and to post immediately copy of said notice in conspicuous places of its business, and keep it posted for a period not less than thirty (30) days.

"(d) To notify the Chairman of the Board within the ten (10) days following the date of the order what measures have been taken to comply with what is ordered herein."

This decision and order was pronounced in default of respondent for not having appeared to answer the complaints charged against it nor having appeared at the hearing which was called for arguing the same. In view of this situation the trial examiner had deemed as admitted all the allegations of the complaints—among them, the one concerning the effectiveness of a collective bargaining agreement between respondent and the Congreso de Uniones Industriales de Puerto Rico, which represented the employees of the production and maintenance units as well as those of the unit of office employees—pursuant to the provisions of § 9 (1) (a) of the

Act, 29 L.P.R.A. § 70 (1) (a), and of Art. II, § 2 (c) of the Regulations No. 2 of the Board, 29 R.&R.P.R. § 64–3 (c).[1]

Forty days after the notice of the decision and order above-copied, on February 14, 1968, the respondent enterprise appeared, through a different counsel, to request the reopening of the case and the holding of a hearing on the merits. On February 28, 1968 the Board denied this motion but set a hearing for respondent to show cause why it could not comply with the aforesaid order. At the hearing, after

---

[1] The recital of the facts about the complaint's procedure which is made by the Board in its brief corresponds faithfully to the showings in the record:

"On October 4, 1967 the Legal Division of the Labor Relations Board issued two complaints against Cadillac Uniform and Linen Supply, Inc. In the notices of hearing which followed, as well as in the complaints, said respondent was notified that it had a term of five (5) days to answer. In the complaints it was also warned, that if it did not answer within the term indicated the allegations against it would be deemed as admitted and it would be understood that it waived the public hearing and the Trial Examiner's report.

". . . . . . .

"On October 11, 1967 the Labor Relations Board agreed to consolidate the cited cases for the purposes of hearing and decision. On October 13, 1967 the respondent employer was duly summoned.

"On November 22, 1967, in view of the fact that a period in excess of the term which the Board's regulations contemplate for the employer to answer the complaint had elapsed, and that it had not requested at any time an extension to answer, complainant's counsel filed a motion in which he requested the Labor Relations Board to take notice of the default in which the respondent employer placed itself when it did not deny the allegations of the complaints in the above-entitled cases. The Legal Division requested that the default of the respondent employer be entered and that all the allegations of the respective complaints be deemed as admitted. On November 27, 1967 the respondent employer filed a brief in opposition to the motion concerning the default previously filed by the Board's Legal Division.

"By an order to the effect, on November 30, 1967, the Labor Relations Board referred the motions of November 22 and 27 to the Trial Examiner.

"The hearing of both cases was set to start at 8:30 a.m. on Monday, December 4, 1967. At that time the respondent employer was not in the courtroom. The Trial Examiner proceeded to wait until 9:25 a.m., and at that time the employer had not appeared at the hearing nor had excused its absence."

admitting the intervention of United Steelworkers of America AFL-CIO—under the allegation that since April 1967 it represented the company's production and maintenance employees and that it administered an agreement which had been in effect since September 1, 1967[2]—the parties were granted a term to submit memorandums about questions of fact and of law concerning the compliance with the order. Another hearing was held on the following August 2 and during the same certain documents were admitted in evidence which the parties had attached to their memorandums "for the sole purpose that they be used in rendering the report which [the] Trial Examiner must submit to the Labor Relations Board as a background of the interaction which occurred between the parties: complainant, respondent and intervener" and the filing of memorandums about the position, stated in advance by the employer, that it could not comply with the order on account of the rescission of the agreement, was requested.

On December 4, 1968 the Trial Examiner submitted a lengthy report to the Board in which he concluded that the company had not shown cause why it could not comply with the Board's order of the previous January 3. Respondent objected to the report. In view of the record, on February 12, 1969, the Board rendered a decision and supplementary order sustaining the original *in toto*.

On May 20, 1969, in view of respondent's persistent attitude of not complying with the order of January 3, 1968,

---

[2] In April 1967, some days after a strike by members of the Congreso de Uniones Industriales had begun, the United Steelworkers of America presented before a district judge cards signed by a number of the company's linen department employees. The magistrate cross-checked them with the payroll of the week which ended on April 15, and certified that the Steelworkers had the support of the majority of the firm's employees. This action was consistent with a stipulation signed by the company and said union. A curious sui generis procedure of decertification and certification of a new union is involved.

the Board requested this Court to enforce it. The employer alleged several reasons, which, in its judgment, prevent it from consenting thereto.

■ 1. We cannot agree that under the facts set forth the Board erred in refusing to reopen the case. Respondent's manifest disregard during all the procedure which culminated in the decision and order of January 3, 1968 did not justify the exercise of the Board's discretion to reopen the case and grant a hearing. There is a marked difference between this attitude and the one observed by it before the Federal Labor Relations Board, where a charge against the union for an alleged violation of § 8(d) of the Federal Act,[3] 29 U.S.C. § 158(d), was prosecuted with zeal and diligence. See, *Graficart Corporation* v. *Labor Relations Board*, 97 P.R.R. 461 (1969).

■ 2. The company maintains that it cannot comply with the affirmative action required for remitting the amount of the corresponding checkoff "in accordance with Art. III of the collective bargaining agreement," on the ground that a new union is the employees' representative, and it is to this union to which the checkoff is sent, in compliance with the existing collective bargaining agreement since September 1, 1967. Such conflict does not exist. Assuming that the substitution of the bargaining unit has been made pursuant to the provisions of § 9(c) of the Federal Act, 29 U.S.C. § 159(c), in order to change the labor representative, see footnote 2, it will be immediately noticed that the scope of the order to remit is limited to the unit of office employees covered by Art.

---

[3] The National Board had jurisdiction since a firm operating in interstate commerce was involved, but the local agency could intervene insofar as the unfair labor practice of violation of collective bargaining agreement is involved. *Beaunit of Puerto Rico* v. *L.R.B.*, 93 P.R.R. 496 (1966); *L.R.B.* v. *Unión Local 847*, 91 P.R.R. 750 (1965); *L.R.B.* v. *M.B.A.*, 91 P.R.R. 484 (1964); *P.R. Telephone* v. *Labor Relations Board*, 86 P.R.R. 362 (1962); and the leading case of *Labor Relations Board* v. *I.L.A.*, 73 P.R.R. 568 (1952).

III of the collective bargaining agreement of April 1966 (Exh. J-8), and not to the production and maintenance unit, covered by Art. V of the collective bargaining agreement of March 20, 1966 (Exh. J-7) which is the unit represented by the United Steelworkers of America AFL-CIO. The order, therefore, does not have the effect of settling a dispute concerning representation and affiliation of laborers whose determination corresponds to the National Board. *Seafarers Int. Union of P.R.* v. *L.R.B.*, 94 P.R.R. 667 (1967).[4]

■ Respondent also alleges that its obligation to honor the collective bargaining agreement existed only until the moment in which, on account of the Union having declared an illegal strike since March 28, 1967, it lost its effectiveness.[5] Several reasons dissipate the strength of this contention: 1—as a question of fact, the Board determined that the collective bargaining agreement continued being in effect and was not affected by the alleged strike actions of the Congreso de Uniones Industriales de Puerto Rico, and this determination cannot be changed in an incident regarding compliance with the order; 2—the presumption of continuity of the collective bargaining agreement exists; see, Annotation, *Continuance or termination of labor union status or authority as bargaining agent*, 42 A.L.R.2d 1415; 3—The National Board, in deciding the charge of violation of § 8(d) charged against the Union, expressly declared that "There is no evidence to support the allegation that the union attempted to or did terminate or modify the existing collective bargaining contract. Nor does it appear that its strike was designed to compel the company to modify or change any term of said contract. Rather the evidence supports the conclusion that

---

[4] Even though a conflict existed with respect to the remittance of dues, we do not believe that respondent incurred any risk in view of the provisions of § 302(c)(2) of the Federal Act as amended in 1959.

[5] The employer sent a notice to the Union on April 10, 1967 considering the collective bargaining agreement as rescinded.

the strike was called in protest over the company's action in changing a work condition of two of its employees who were members of the union"; 4—for the substitution of representation the procedure provided by § 9 (c) of the federal statute, *supra*, was not followed, but a sui generis procedure of questionable merit.

■ 3. Respondent indicates that the alleged illegal employer's conduct—refusal to bargain which gives rise to the request asking respondent to meet with the Union's representatives—is specifically prohibited by the federal statute, and, therefore, it is not incumbent upon the State Board to sanction it. It loses sight of the fact that the unfair labor practice charged was not the refusal to bargain, but the violation of the agreement consisting in "refusing to meet . . . in the Grievance Committee, in violation of Art. IX [of the collective bargaining agreement] to discuss the violations and the complaints, deciding in favor of the unilateral rescission of said collective bargaining agreement."

Judgment shall be rendered enforcing the order of the Labor Relations Board of January 3, 1968.

Mr. Chief Justice, Mr. Justice Hernández Matos, and Mr. Justice Ramírez Bages did not participate herein.